# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| William Moreland, *et al.*,<br><br>individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br><br>1st Franklin Financial Corporation,<br><br>    Defendant. | Case No. 2:23-cv-00038-SCJ |

## <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>

Representative Plaintiffs allege as follows:

## <u>INTRODUCTION</u>

1.      Representative Plaintiffs William Moreland, Price Laney, Ezra Williams, Cindy Medine, Sivan Neli Ariel, Jennifer Caraway, Glenn Craft, Darryl Green, Douglas Smith, Michelle Thomas, Valerie Boyd and Michael Broomfield ("Representative Plaintiffs") bring this class action against Defendant Franklin First Financial Corporation ("1FFC" or "Defendant") for its failure to properly secure and safeguard Representative Plaintiffs' and Class Members' personally identifiable information stored within Defendant's information network, including without limitation full names, Social Security numbers, bank account numbers and routing information (these types of information, *inter alia*, being thereafter referred to collectively as "personally identifiable information" or "PII").[1]

---

[1]   Personally identifiable information ("PII") generally incorporates information that can be used to  distinguish or trace an individual's identity, either alone or when combined with other personal or  identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its  face expressly identifies an individual. PII also is generally defined to include certain identifiers  that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

2.    With this action, Representative Plaintiffs seek to hold Defendant responsible for the harms it caused and will continue to cause Representative Plaintiffs and numerous other similarly situated persons in the massive and preventable cyberattack purportedly discovered by Defendant on November 17, 2022, by which cybercriminals infiltrated Defendant's inadequately protected network servers and accessed highly sensitive PII, which was being kept unprotected (the "Data Breach").

3.    Representative Plaintiffs further seek to hold Defendant responsible for not ensuring the PII was maintained in a manner consistent with industry and other relevant standards.

4.    While Defendant claims to have discovered the breach "on or about" November 17, 2022, Defendant did not begin informing victims of the Data Breach until January 10, 2023 and failed to inform victims when the Data Breach began or how long the Data Breach occurred. Indeed, Representative Plaintiffs and Class Members were wholly unaware of the Data Breach until they received letters from Defendant informing them of it. The notices received by many of the Representative Plaintiffs were dated February 14, 2023.

5.    Defendant acquired, collected, and stored Representative Plaintiffs' and Class Members' PII. Therefore, at all relevant times, Defendant knew or should

have known that Representative Plaintiffs and Class Members would use Defendant's services to store and/or share sensitive data, including highly confidential PII.

6.  By obtaining, collecting, using and deriving a benefit from Representative Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties to those individuals. These duties arise from state and federal statutes and regulations as well as common law principles.

7.  Defendant disregarded Representative Plaintiffs' and Class Members' rights by intentionally, willfully, recklessly or negligently failing to take and implement adequate and reasonable measures to ensure that Representative Plaintiffs' and Class Members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, Representative Plaintiffs' and Class Members' PII was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party seeking to profit off this disclosure by defrauding Representative Plaintiffs and Class Members in the future. Representative Plaintiffs and Class Members have a continuing interest in

ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

8.     Accordingly, Representative Plaintiffs bring this action against Defendant on behalf of a nationwide class for negligence, negligence per se, breach of implied contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and declaratory relief, seeking redress for 1FFC's unlawful conduct. In addition, Representative Plaintiffs bring this action on behalf of state-specific sub-classes for certain state statutory claims.

9.     Representative Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, payment for lost time, injunctive relief including improvements to Defendant's data security systems, future annual audits, adequate, long term credit monitoring services funded by Defendant, and declaratory relief.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one

other Class Member is a citizen of a state different from Defendant. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

11.     Defendant is headquartered and routinely conducts business in the State where this District is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

12.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiffs' claims took place within this District, and Defendant does business in this Judicial District.

## **PLAINTIFFS**

13.     At all times herein relevant, each of the Representative Plaintiffs was and is a member of the Nationwide Class and one of the State Subclasses.

14.     As required in order to obtain services from Defendant, Representative Plaintiffs provided Defendant with highly sensitive personal and financial information.

15.     Representative Plaintiffs' PII was exposed in the Data Breach because Defendant stored and/or shared Representative Plaintiffs' PII. Their PII was within Defendant's possession and control at the time of the Data Breach.

16.     Representative Plaintiffs received letters from Defendant, many dated February 14, 2023, stating that their PII was involved in the Data Breach (the "Notice").

17.     As a result, Representative Plaintiffs spent time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring their accounts and seeking legal counsel regarding their options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

18.     Representative Plaintiffs suffered actual injury in the form of damages to and diminution in the value of their PII—a form of intangible property that they entrusted to Defendant, which was compromised in and as a result of the Data Breach.

19.     Representative Plaintiffs suffered lost time, annoyance, interference and inconvenience as a result of the Data Breach and have anxiety and increased

concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using and selling their PII.

20.     Representative Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PII, in combination with their names, being placed in the hands of unauthorized third parties/criminals.

21.     Representative Plaintiffs have a continuing interest in ensuring that their PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### *Representative Plaintiff William Moreland*

22.     Representative Plaintiff William Moreland is an adult individual and, at all relevant times herein, a resident and citizen of the State of Georgia. Representative Plaintiff Moreland is a victim of the Data Breach. Defendant received Representative Plaintiff Moreland's PII in connection with the lending services he received and/or requested from Defendant. As a result, Representative Plaintiff Moreland's information was among the data accessed by an unauthorized third party in the Data Breach.

*Representative Plaintiff Price Laney*

23.    Representative Plaintiff Price Laney is an adult individual and, at all relevant times herein, a resident and citizen of the State of Georgia. Representative Plaintiff Laney is a victim of the Data Breach. Defendant received Representative Plaintiff Laney's PII in connection with the lending services he received and/or requested from Defendant. As a result, Representative Plaintiff Laney's information was among the data accessed by an unauthorized third party in the Data Breach.

*Representative Plaintiff Ezra Williams*

24.    Representative Plaintiff Ezra Williams is an adult individual and, at all relevant times herein, a resident and citizen of the State of Georgia. Representative Plaintiff Williams is a victim of the Data Breach. Defendant received Representative Plaintiff Williams's PII in connection with the lending services he received and/or requested from Defendant. As a result, Representative Plaintiff Williams's information was among the data accessed by an unauthorized third party in the Data Breach.

25.    Representative Plaintiff Williams was notified that a new Regions bank credit card account was fraudulently opened in his name in February 2023. He is disputing that account, which he was informed will take approximately a month to complete. In addition, he has received multiple suspicious text messages including

"verification codes" related to financial matters, including the Klarna payment website, an AI subscription website, and unpaid invoices. He has noticed that in the past couple of months, his credit score has dropped about 100 points, due to no fault of his own. For the past few months, he has received a combination of around 5-6 spam calls, texts, and many spam emails per day about his Social Security and other highly sensitive matters. As Defendant advised in its notice letters, he has expended a significant amount time (several hours per week) mitigating his identity fraud risks, including freezing his credit, changing his passwords, and monitoring his financial accounts closely. All of these fraudulent activities have caused Representative Plaintiff Williams a significant amount of anxiety.

### Representative Plaintiff Cindy Medine

26.     Representative Plaintiff Cindy Medine is an adult individual and, at all relevant times herein, a resident and citizen of the State of Louisiana. Representative Plaintiff Medine is a victim of the Data Breach. Defendant received Representative Plaintiff Medine's PII in connection with the lending services she received and/or requested from Defendant. As a result, Representative Plaintiff Medine's information was among the data accessed by an unauthorized third party in the Data Breach.

***Representative Plaintiff Sivan Neli Ariel***

27.     Representative Plaintiff Sivan Neli Ariel is an adult individual and, at all relevant times herein, a resident and citizen of the State of Georgia. Representative Plaintiff Ariel is a victim of the Data Breach. Defendant received Representative Plaintiff Ariel's PII in connection with the lending services she received and/or requested from Defendant. As a result, Representative Plaintiff Ariel's information was among the data accessed by an unauthorized third party in the Data Breach.

***Representative Plaintiff Jennifer Caraway***

28.     Representative Plaintiff Jennifer Caraway is an adult individual and, at all relevant times herein, a resident and citizen of the State of Mississippi. Representative Plaintiff Caraway is a victim of the Data Breach. Defendant received Representative Plaintiff Caraway's PII in connection with the lending services she received and/or requested from Defendant. As a result, Representative Plaintiff Caraway's information was among the data accessed by an unauthorized third party in the Data Breach.

***Representative Plaintiff Glenn Craft***

29.     Representative Plaintiff Glenn Craft is an adult individual and, at all relevant times herein, a resident and citizen of the State of Georgia. Representative

Plaintiff Craft is a victim of the Data Breach. Defendant received Representative Plaintiff Craft's PII in connection with the lending services she received and/or requested from Defendant. As a result, Representative Plaintiff Craft's information was among the data accessed by an unauthorized third party in the Data Breach.

***Representative Plaintiff Darryl Green***

30.     Representative Plaintiff Darryl Green is an adult individual and, at all relevant times herein, a resident and citizen of the State of South Carolina. Representative Plaintiff Green is a victim of the Data Breach. Defendant received Representative Plaintiff Green's PII in connection with the lending services he received and/or requested from Defendant. As a result, Representative Plaintiff Green's information was among the data accessed by an unauthorized third party in the Data Breach.

***Representative Plaintiff Douglas Smith***

31.     Representative Plaintiff Douglas Smith is an adult individual and, at all relevant times herein, a resident and citizen of the State of Georgia. Representative Plaintiff Smith is a victim of the Data Breach. Defendant received Representative Plaintiff Smith's PII in connection with the lending services he received and/or requested from Defendant. As a result, Representative Plaintiff Smith's information was among the data accessed by an unauthorized third party in the Data Breach.

*Representative Plaintiff Michelle Thomas*

32.     Representative Plaintiff Michelle Thomas is an adult individual and, at all relevant times herein, a resident and citizen of the State of Louisiana. Representative Plaintiff Thomas is a victim of the Data Breach. Defendant received Representative Plaintiff Thomas' PII in connection with the lending services she received and/or requested from Defendant. As a result, Representative Plaintiff Thomas's information was among the data accessed by an unauthorized third party in the Data Breach.

*Representative Plaintiff Valerie Boyd*

33.     Representative Plaintiff Valerie Boyd is an adult individual and, at all relevant times herein, a resident and citizen of the State of South Carolina. Representative Plaintiff Boyd is a victim of the Data Breach. Defendant received Representative Plaintiff Boyd's PII in connection with the lending services she received and/or requested from Defendant. As a result, Representative Plaintiff Boyd's information was among the data accessed by an unauthorized third party in the Data Breach.

34.     Since the Data Breach, Representative Plaintiff Boyd has received a credit alert from Credit Karma and a notice that her PII has been found on the Dark Web. She receives multiple spam calls per day. She has also received text messages

with suspicious attachments and photos from unknown senders, and others suggesting fraudulent activity and locked access to her Amazon account. Most recently, she has received alerts that her Amazon and Netflix accounts were breached. She believes that each of these are indications that her PII has already been uploaded to the Dark Web and is being used for fraudulent purposes. As a result of the Data Breach, and following the advice of Defendant, Representative Plaintiff Boyd spends about an hour each week monitoring her financial accounts for fraudulent activity.

***Representative Plaintiff Michael Broomfield***

35.     Representative Plaintiff Michael Broomfield is an adult individual and, at all relevant times herein, a resident and citizen of the State of Louisiana. Representative Plaintiff Broomfield is a victim of the Data Breach. Defendant received Representative Plaintiff Broomfield's PII in connection with the lending services he received and/or requested from Defendant. As a result, Representative Plaintiff Broomfield's information was among the data accessed by an unauthorized third party in the Data Breach.

## **DEFENDANT**

36.     Defendant 1st Franklin Financial Corporation is a Georgia corporation located at 135 East Tugalo Street, Toccoa, Georgia 30577.

37.    Defendant is a financial institution, primarily providing personal loans.[2]

38.    1FFC, in the regular course of its business, collects and maintains the PII of its customers as a requirement of its business practices.

39.    1FFC has approximately 344 branch offices in 9 states including: Alabama, Georgia, Kentucky, Louisiana, Mississippi, South Carolina, Tennessee, Texas, and Virginia.[3]

40.    The customers of 1FFC provide it with their PII with the mutual understanding that this highly sensitive private information was confidential and would be properly safeguarded from misuse and theft.

41.    1FFC promises in its Privacy Policy that it "endeavors to incorporate commercially reasonable physical, electronic, and procedural safeguards to help protect and secure your Personal Information."[4]

42.    In the course of collecting Private Information from consumers, including Representative Plaintiffs and Class Members, 1FFC promised to provide confidentiality and adequate security for Private Information through its applicable

---

[2]    1st Franklin Financial Corporation, "*Why Us?*," https://www.1ffc.com/why-us/ (last accessed Mar. 1, 2023).

[3] https://locations.1ffc.com/(last accessed Mar. 1, 2023).

[4] Privacy Policy, https://www.1ffc.com/wp-content/uploads/2020/05/1FF_Online_Privacy_Policy.pdf (last visited Mar. 1, 2023).

Privacy Policy and in compliance with statutory privacy requirements applicable to its industry. 1FFC is aware of and had obligations created by the FTCA, contract, industry standards, and common law to keep Representative Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

43.    Representative Plaintiffs and the Class Members, as consumers, relied on the promises and duties of 1FFC to keep their sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

44.    The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiff. Representative Plaintiff will seek Leave of Court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identities become known.

## CLASS ACTION ALLEGATIONS

45.    Representative Plaintiffs bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following classes/subclass(es) (collectively, the "Class(es)"):

**Nationwide Class:**
"All individuals within the United States of America whose PII was exposed to unauthorized third parties as a result of the Data Breach discovered by Defendant on November 17, 2022."

**Georgia Subclass:**
"All individuals within the State of Georgia whose PII was stored by Defendant and/or was exposed to unauthorized third parties as a result of the Data Breach discovered by Defendant on November 17, 2022."

**Louisiana Subclass:**
"All individuals within the State of Louisiana whose PII was stored by Defendant and/or was exposed to unauthorized third parties as a result of the Data Breach discovered by Defendant on November 17, 2022."

**Mississippi Subclass:**
"All individuals within the State of Mississippi whose PII was stored by Defendant and/or was exposed to unauthorized third parties as a result of the Data Breach discovered by Defendant on November 17, 2022."

**South Carolina Subclass:**
"All individuals within the State of South Carolina whose PII was stored by Defendant and/or was exposed to unauthorized third parties as a result of the Data Breach discovered by Defendant on November 17, 2022."

46.   Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol

for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47.    Also, in the alternative, Representative Plaintiffs request additional Subclasses as necessary based on the types of PII that were compromised.

48.    Representative Plaintiffs reserve the right to amend the above definition or to propose Subclasses in subsequent pleadings and motions for class certification.

49.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed Classes is easily ascertainable.

     a.   <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiffs are informed and believe and, on that basis, allege that the total number of Class Members is in the hundreds of thousands of individuals. Membership in the Classes will be determined by analysis of Defendant's records.

     b.   <u>Commonality</u>: Representative Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including but not necessarily limited to:

1) Whether Defendant had a legal duty to Representative Plaintiffs and the Classes to exercise due care in collecting, storing, using and/or safeguarding their PII;

2) Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

3) Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

4) Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

5) Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

6) Whether Defendant adequately, promptly and accurately informed Representative Plaintiffs and Class Members that their PII had been compromised;

7) How and when Defendant actually learned of the Data Breach;

8) Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of Representative Plaintiffs' and Class Members' PII;

9) Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10) Whether Defendant engaged in unfair, unlawful or deceptive practices by failing to safeguard Representative Plaintiffs' and Class Members' PII;

11) Whether Representative Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct;

12) Whether Representative Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c.      <u>Typicality</u>: Representative Plaintiffs' claims are typical of the claims of the Plaintiff Classes. Representative Plaintiffs and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d.      <u>Adequacy of Representation</u>: Representative Plaintiffs in this class action are adequate representatives of each of the Plaintiff Classes in that the Representative Plaintiffs have the same interest in the litigation of this case as the Class Members, are committed to vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Classes in their entireties. Representative Plaintiffs anticipate no management difficulties in this litigation.

e.      <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Plaintiff Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a

risk of inconsistent rulings which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

50.     This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes in their entireties. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Representative Plaintiffs' challenge of these policies and practices hinges on Defendant's conduct with respect to the Classes in their entirety, not on facts or law applicable only to Representative Plaintiffs.

51.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure Class Members' PII, and Defendant may continue to act unlawfully as set forth in this Complaint.

52.     Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COMMON FACTUAL ALLEGATIONS

**The Data Breach**

53.      In the course of the Data Breach, one or more unauthorized third parties accessed Class Members' sensitive data including but not limited to full names, Social Security numbers, bank account numbers and routing information. Representative Plaintiffs were among the individuals whose data was accessed in the Data Breach.

54.      According to the Data Breach Notification related to Personal Health Information ("PHI") only that Defendant filed with the United States Department of Health and Human Services, 3,039 persons' PHI was affected by the Data Breach.[5] Defendant reported to the South Carolina Department of Consumer Affairs that 147,192 residents of South Carolina were affected by the Data Breach.

55.      Representative Plaintiffs were provided with some of the information detailed above through notice letters sent Defendant and dated February 14, 2023. Representative Plaintiffs were not aware of the Data Breach until receiving their notice letters.

---

[5]   Breach Portal, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed Mar. 1, 2023).

**Defendant's Failed Response to the Breach**

56.    Upon    information    and    belief,    the    unauthorized    third-party cybercriminals gained access to Representative Plaintiffs' and Class Members' PII with the intent of engaging in misuse of the PII, including marketing and selling Representative Plaintiffs' and Class Members' PII.

57.    Not until roughly three months after it claims to have discovered the Data Breach did Defendant begin sending the Notice to persons whose PII Defendant confirmed was potentially compromised as a result of the Data Breach. The Notice provided basic details of the Data Breach and Defendant's recommended next steps.

58.    The Notice included, *inter alia*, the claims that Defendant had learned of the Data Breach on November 17, 2022 and Defendant began sending out notices to potentially affected individuals on January 10, "2022" [sic].

59.    Upon    information    and    belief,    the    unauthorized    third-party cybercriminals gained access to Representative Plaintiffs' and Class Members' PII with the intent of misusing the PII, including marketing and selling Representative Plaintiffs' and Class Members' PII.

60.    Defendant had and continues to have obligations created by applicable federal and state law as set forth herein, reasonable industry standards, common law

and its own assurances and representations to keep Representative Plaintiffs' and Class Members' PII confidential and to protect such PII from unauthorized access.

61.     Representative Plaintiffs and Class Members were required to provide their PII to Defendant in order to receive financial services, and as part of providing financial services, Defendant created, collected and stored Representative Plaintiffs' and Class Members' PII with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

62.     Despite this, Representative Plaintiffs and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used and what steps are being taken, if any, to secure their PII going forward. Representative Plaintiffs and Class Members are, thus, left to speculate as to where their PII ended up, who has used it and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

63.     Representative Plaintiffs' and Class Members' PII may end up for sale on the Dark Web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Representative Plaintiffs and/or

Class Members. Either way, unauthorized individuals can now easily access Representative Plaintiffs' and Class Members' PII.

**Defendant Collected/Stored Class Members' PII and Financial Information**

64.    Defendant acquired, collected, stored and assured reasonable security over Representative Plaintiffs' and Class Members' PII.

65.    As a condition of its relationships with Representative Plaintiffs and Class Members, Defendant required that Representative Plaintiffs and Class Members entrust Defendant with highly sensitive and confidential PII. Defendant, in turn, stored that information on its system which was ultimately affected by the Data Breach.

66.    By obtaining, collecting and storing Representative Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that they were thereafter responsible for protecting Representative Plaintiffs' and Class Members' PII from unauthorized disclosure.

67.    Representative Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Representative Plaintiffs and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business and healthcare purposes only and to make only authorized disclosures of this information.

68.     Defendant could have prevented the Data Breach, which began no later than November 17, 2022, by properly securing and encrypting and/or more securely encrypting its servers generally, as well as Representative Plaintiffs' and Class Members' PII.

69.     Defendant's negligence in safeguarding Representative Plaintiffs' and Class Members' PII is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

70.     Due to the high-profile nature of such breaches and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring in its industry and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendant is a large, sophisticated operation with the resources to put adequate data security protocols in place.

71.     Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Representative Plaintiffs' and Class Members' PII from being compromised.

**Defendant Had an Obligation to Protect the Stolen Information**

72.     Defendant's failure to adequately secure Representative Plaintiffs' and Class Members' sensitive data breached duties it owed Representative Plaintiffs and Class Members under statutory and common law. As a financial entity, Defendant has a statutory duty under federal and state statutes to safeguard Representative Plaintiffs' and Class Members' data. Moreover, Representative Plaintiffs and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard their data, independent of any statute.

73.     Defendant was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

74.     In addition to its obligations under federal and state laws, Defendant owed a duty to Representative Plaintiffs and Class Members to exercise reasonable

care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in Defendant's possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. Defendant owed a duty to Representative Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks and protocols adequately protected Representative Plaintiffs' and Class Members' PII.

75.     Defendant owed a duty to Representative Plaintiffs and Class Members to design, maintain and test its computer systems, servers and networks to ensure that the PII in its possession was adequately secured and protected.

76.     Defendant owed a duty to Representative Plaintiffs and Class Members to create and implement reasonable data security practices and procedures to protect the PII in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

77.     Defendant owed a duty to Representative Plaintiffs and Class Members to implement processes that would immediately detect a breach on its data security systems in a timely manner.

78.     Defendant owed a duty to Representative Plaintiffs and Class Members to act upon data security warnings and alerts in a timely fashion.

79.     Defendant owed a duty to Representative Plaintiffs and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust this PII to Defendant.

80.     Defendant owed a duty of care to Representative Plaintiffs and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

81.     Defendant owed a duty to Representative Plaintiffs and Class Members to encrypt and/or more reliably encrypt Representative Plaintiffs' and Class Members' PII and monitor user behavior and activity in order to identity possible threats.

82.     On March 30, 2018, more than four years before the Data Breach, Defendant filed an annual report with the Securities Exchange Commission ("SEC") that acknowledged the following:

> **A data security breach with regard to personally identifiable information about our customers or employees could negatively affect operations and result in high costs.**
>
> In the ordinary course of business, we receive a significant amount of personally identifiable information ("PII") about our customers.  We also receive PII from our employees.  Numerous state and federal regulations, as well as other vendor standards, govern the collection and

maintenance of PII from consumers and other individuals. There are numerous opportunities for a data security breach, including cyber-security breaches, burglary, lost or misplaced data, scams, or misappropriation of data by employees, vendors or unaffiliated third parties. Despite the security measures we have in place and any additional measures we may choose to or be required to implement or adopt in the future, our facilities and systems, and those of our third-party service providers, could be vulnerable to intentional or unintentional security breaches, computer viruses, lost or misplaced data, programming or human errors, scams, burglary, acts of vandalism, or other events. Alleged or actual data security breaches, and costs to avoid the occurrence of those events, can increase costs of doing business, negatively affect customer satisfaction, expose us to negative publicity, individual claims or consumer class actions, administrative, civil or criminal investigations or actions, and infringe upon our proprietary information. Any of these could significantly increase our costs of doing business and materially adversely affect our business and results of operations.[6]

83.   In its March 30, 2018 SEC filing, Defendant acknowledged that (i) its business was at risk from, and may be impacted by, cybersecurity attacks, (ii) such cyberattacks could include attempts to gain unauthorized access to Defendant's data and computer systems, and (iii) such cybersecurity attacks could compromise the confidential information of Defendant's customers and employees.

---

[6] *See* Form 10-K (Mar. 30, 2018), *available at* https://www.sec.gov/Archives/edgar/data/38723/000137647418000064/ff_10k.htm (last visited Feb. 28, 2023).

84.     Defendant filed annual reports similarly acknowledging the risk of a data security breach impacting customer and employee PII in 2019, 2020, 2021, and 2022.

85.     Because Defendant had a duty to protect Representative Plaintiffs' and Class Members' PII, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

86.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks because warnings were readily available and accessible via the internet.

87.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[7]

---

[7] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited Feb. 24, 2023).

88.    In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "*[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies*.   They breach networks, use specialized tools to maximize damage, *leak corporate information on dark web portals*, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[8]

89.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "*[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data* if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[9]

90.    This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) cybercriminals were targeting big companies such as Defendant, (ii) cybercriminals were

---

[8] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), *available at* https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited Feb. 24, 2023).

[9] U.S. CISA, Ransomware Guide – September 2020, *available at* https://www.cisa.gov/sites/default/files/publications/CISA_MS ISAC_Ransomware%20Guide_S508C_.pdf (last visited Feb. 24, 2023).

ferociously aggressive in their pursuit of big companies such as Defendant, (iii) cybercriminals were leaking corporate information on dark web portals, and (iv) cybercriminals' tactics included threatening to release stolen data.

91.    In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of Representative Plaintiffs and Class Members in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

92.    Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Representative Plaintiffs' and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

93.    Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

**Value of the Relevant Sensitive Information**

94.    PII is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers and other personal information on a number of underground internet websites.

Unsurprisingly, the finance industry is at high risk for and is acutely affected by cyberattacks.

95.     The high value of PII to criminals is evidenced by the prices criminals will pay for it through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[10] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[11] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[12]

96.     These criminal activities have and will result in devastating financial and personal losses to Representative Plaintiffs and Class Members. For example, it is believed that certain PII compromised in the 2017 Experian data breach was being used three years later by identity thieves to apply for COVID-19-related benefits in

---

[10]  *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:
https://www.digitaltrends.com/computing/personal-data-sold-on-the- dark-web-how-much-it-costs/ (last accessed July 28, 2021).
[11]  *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed November 5, 2021).
[12]  *In the Dark*, VPNOverview, 2019, *available at*:
https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed January 21, 2022).

the state of Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiffs and Class Members for the rest of their lives. They will need to remain constantly vigilant.

97.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

98.     Identity thieves can use PII, such as that of Representative Plaintiffs and Class Members which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

99.     The ramifications of Defendant's failure to keep secure Representative Plaintiffs' and Class Members' PII are long lasting and severe. Once PII is stolen,

particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, Representative Plaintiffs' and Class Members' PII was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

100.   There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[13]

101.   When cybercriminals access financial information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Representative Plaintiffs and Class Members.

---

[13]   *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed January 21, 2022).

102.   And data breaches are preventable.[14] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[15] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[16]

103.   Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules and procedures. Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*.[17]

104.   Here, Defendant knew of the importance of safeguarding PII and financial information and of the foreseeable consequences that would occur if Representative Plaintiffs' and Class Members' PII was stolen, including the

---

[14]   Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)

[15]   *Id.* at 17.

[16]   *Id.* at 28.

[17]   *Id.*

significant costs that would be placed on Representative Plaintiffs and Class Members as a result of a breach of this magnitude. As detailed above, Defendant is a large, sophisticated organization with the resources to deploy robust cybersecurity protocols. It knew or should have known that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Representative Plaintiffs and Class Members. Its failure to do so is therefore intentional, willful, reckless and/or grossly negligent.

105.   Defendant disregarded the rights of Representative Plaintiffs and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions, (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Representative Plaintiffs' and Class Members' PII, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Representative Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**(On behalf of the Nationwide Class and the State Subclasses)**

106.   Each and every allegation of the preceding paragraphs 1-105 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

107.   At all times herein relevant, Defendant owed Representative Plaintiffs and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PII and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing Representative Plaintiffs' and Class Members' PII in its computer systems and on its networks.

108.   Among these duties, Defendant was expected:

   a.   to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in its possession;

   b.   to protect Representative Plaintiffs' and Class Members' PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

   c.   to implement processes to quickly detect the Data Breach and to timely act on warnings about data breaches; and

   d.   to promptly notify Representative Plaintiffs and Class Members of any data breach, security incident or intrusion that affected or may have affected their PII.

109.   Defendant knew that the PII was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Representative Plaintiffs and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

110.   Defendant knew or should have known of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Defendant knew about numerous, well-publicized data breaches.

111.   Defendant knew or should have known that its data systems and networks did not adequately safeguard Representative Plaintiffs' and Class Members' PII.

112.   Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the PII that Representative Plaintiffs and Class Members had entrusted to it.

113.   Defendant breached its duties to Representative Plaintiffs and Class Members by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard Representative Plaintiffs' and Class Members' PII.

114.   Because Defendant knew that a breach of its systems could damage thousands of individuals, including Representative Plaintiffs and Class Members, Defendant had a duty to adequately protect its data systems and the PII contained therein.

115.   Representative Plaintiffs' and Class Members' willingness to entrust Defendant with their PII was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems and the PII it stored on them from attack. Thus, Defendant had a special relationship with Representative Plaintiffs and Class Members.

116.   Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Representative Plaintiffs' and Class Members' PII and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant and Representative Plaintiff and/or the remaining Class Members.

117.   Defendant breached its general duty of care to Representative Plaintiff and Class Members in but not necessarily limited to the following ways:

     a.    by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard Representative Plaintiffs' and Class Members' PII;

b.     by failing to timely and accurately disclose that Representative Plaintiffs' and Class Members' PII had been improperly acquired or accessed;

c.     by failing to adequately protect and safeguard the PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII;

d.     by failing to provide adequate supervision and oversight of the PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Representative Plaintiffs' and Class Members' PII, misuse the PII and intentionally disclose it to others without consent.

e.     by failing to adequately train its employees to not store PII longer than absolutely necessary;

f.     by failing to consistently enforce security policies aimed at protecting Representative Plaintiffs' and the Class Members' PII;

g.     by failing to implement processes to quickly detect data breaches, security incidents or intrusions; and

h.     by failing to encrypt Representative Plaintiffs' and Class Members' PII and monitor user behavior and activity in order to identify possible threats.

118.   Defendant's willful failure to abide by these duties was wrongful, reckless and grossly negligent in light of the foreseeable risks and known threats.

119.   As a proximate and foreseeable result of Defendant's grossly negligent conduct, Representative Plaintiffs and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

120.   The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PII to Representative Plaintiffs and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their PII.

121.   Defendant breached its duty to notify Representative Plaintiffs and Class Members of the unauthorized access by waiting months after learning of the Data Breach to notify Representative Plaintiffs and Class Members and then by failing and continuing to fail to provide Representative Plaintiffs and Class Members sufficient information regarding the breach. To date, Defendant has not provided sufficient information to Representative Plaintiffs and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Representative Plaintiffs and Class Members.

122.   Further, through its failure to provide timely and clear notification of the Data Breach to Representative Plaintiffs and Class Members, Defendant

prevented Representative Plaintiffs and Class Members from taking meaningful, proactive steps to secure their PII.

123.   There is a close causal connection between Defendant's failure to implement security measures to protect Representative Plaintiffs' and Class Members' PII and the harm suffered, or risk of imminent harm suffered by Representative Plaintiffs and Class Members. Representative Plaintiffs' and Class Members' PII was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing and maintaining appropriate security measures.

124.   Defendant's wrongful actions, inactions and omissions constituted (and continue to constitute) common law negligence.

125.   The damages Representative Plaintiffs and Class Members have suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

126.   Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses such as Defendant of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

127.    Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiffs and Class Members.

128.    Defendant's violation of 15 U.S.C. § 45 constitutes negligence *per se.*

129.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the loss of the opportunity of how their PII is used, (iii) the compromise, publication and/or theft of their PII, (iv) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud and/or unauthorized use of their PII, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from embarrassment and identity theft, (vi) the continued risk to their PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant

fails to undertake appropriate and adequate measures to protect Representative Plaintiffs' and Class Members' PII in its continued possession, and (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members.

130.  As a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including but not limited to anxiety, emotional distress, loss of privacy and other economic and noneconomic losses.

131.  Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Representative Plaintiffs and Class Members have suffered and will continue to suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

## SECOND CLAIM FOR RELIEF
### Breach of Implied Contract
### (On behalf of the Nationwide Class and the State Subclasses)

132.   Each and every allegation of the preceding paragraphs 1-131 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

133.   Through their course of conduct, Defendant, Representative Plaintiffs and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Representative Plaintiffs' and Class Members' PII.

134.   Defendant required Representative Plaintiffs and Class Members to provide and entrust their PII to it as a condition of obtaining Defendant's services.

135.   Representative Plaintiffs would not have provided their PII to Defendant without Defendant's agreement to protect it.

136.   Defendant solicited and invited Representative Plaintiffs and Class Members to provide their PII as part of Defendant's regular business practices. Representative Plaintiffs and Class Members accepted Defendant's offers and provided their PII to Defendant.

137.   As a condition of being direct customers/clients of Defendant, Representative Plaintiffs and Class Members provided and entrusted their PII to

Defendant. In so doing, Representative Plaintiffs and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify Representative Plaintiffs and Class Members if their data had been breached and compromised or stolen.

138.   A meeting of the minds occurred when Representative Plaintiffs and Class Members agreed to, and did, provide their PII to Defendant in exchange for, amongst other things, the protection of their PII.

139.   Representative Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

140.   Defendant breached the implied contracts it made with Representative Plaintiffs and Class Members by failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

141.   As a direct and proximate result of Defendant's above-described breach of implied contract, Representative Plaintiffs and Class Members have suffered and will continue to suffer (i) ongoing, imminent and impending threat of identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm,

(iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (vi) other economic and noneconomic harm.

### THIRD CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Nationwide Class and the State Subclasses)

142.   Each and every allegation of the preceding paragraphs 1-141 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

143.   Every contract in this State has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

144.   Representative Plaintiffs and Class Members have complied with and performed all conditions of their contracts with Defendant.

145.   Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Representative Plaintiffs and Class Members and continued acceptance of PII and storage of other personal information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

146.   Defendant acted in bad faith and/or with malicious motive in denying Representative Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of the Nationwide Class and the State Subclasses)

147.   Each and every allegation of the preceding paragraphs 1-146 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

148.   Representative Plaintiffs and Class Members conferred a monetary benefit on Defendant in the form of the provision of their PII and Defendant would be unable to engage in its regular course of business without that PII.

149.   Defendant appreciated that a monetary benefit was being conferred upon it by Representative Plaintiffs and Class Members and accepted that monetary benefit.

150.   However, acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendant to retain that benefit without payment of the value thereof. Specifically, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure

Representative Plaintiffs' and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Representative Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Representative Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

151.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Representative Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures.

152.   Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

153.   If Representative Plaintiffs and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

154.   Representative Plaintiffs and Class Members have no adequate remedy at law.

155.   As a direct and proximate result of Defendant's conduct,

Representative Plaintiffs and Class Members have suffered and/or will continue to suffer injury, including but not limited to (i) actual identity theft, (ii) the loss of the opportunity how their PII is used, (iii) the compromise, publication, and/or theft of their PII, (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft, (vi) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession, and (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest and repair the impact of the PII compromised as a result of the Data Breach for the remainder of Representative Plaintiffs' and Class Members' lives.

156.   As a direct and proximate result of Defendant's conduct, Representative Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

157.   Defendant should be compelled to disgorge into a common fund or

constructive trust, for the benefit of Representative Plaintiffs and Class Members, proceeds that they unjustly received from them.

## FIFTH CLAIM FOR RELIEF
### Declaratory Judgment
### (On behalf of the Nationwide Class and the State Subclasses)

158.   Each and every allegation of the preceding paragraphs 1-157 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein

159.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

160.   An actual controversy has arisen in the wake of Defendant's Data Breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' PII and whether Defendant is currently maintaining data security measures adequate to protect Representative Plaintiffs and Class Members from further data breaches that compromise their PII.

161.   Representative Plaintiffs allege that Defendant's data security measures remain inadequate. Representative Plaintiffs will continue to suffer injury as a result

of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

162.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.   Defendant continues to owe a legal duty to secure consumers' Private Information and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;

b.   Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII.

163.   The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

164.   If an injunction is not issued, Representative Plaintiffs and Class Members will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach on Defendant's systems. The risk of another such breach is real, immediate and substantial. If another breach occurs to Defendant, Representative Plaintiffs and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will

be forced to bring multiple lawsuits to rectify the same conduct.

165.   The hardship to Representative Plaintiffs and Class Members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Among other things, if Defendant is subject to another data breach, Representative Plaintiffs and Class Members will likely be subjected to fraud, identify theft and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

166.   Issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach on Defendant, thus eliminating the additional injuries that would result to Representative Plaintiffs and the millions of consumers whose PII would be further compromised.

**SIXTH CLAIM FOR RELIEF**
**Violations of the Georgia Deceptive Practices Act**
**GA. CODE ANN. §§ 10-1-370,** *et seq.*
**(On behalf of the Georgia Subclass**)

167.   Each and every allegation of the preceding paragraphs 1-166 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

168.   The Georgia Plaintiffs, Moreland, Laney, Williams, Ariel, Craft, and Smith, individually (hereinafter "Plaintiffs" for purposes of this Count only) and on behalf of the Georgia Subclass, bring this claim.

169.   Defendant, Plaintiffs and the Georgia Subclass members are "persons" within the meaning of the Georgia Deceptive Trade Practices Act ("Georgia DTPA"), Ga. Code Ann. § 10- 1-370(5).

> The Georgia DTPA states the following at Ga. Code Ann. § 10-1-372: (a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . . (5) Represents that goods or services have . . . characteristics, . . . uses, [or] benefits . . . that they do not have; . . . (7) Represents that goods or services are of a particular standard, quality, or grade . . . if they are of another; . . . [or] (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

170.   Defendant engaged in deceptive trade practices in violation of Ga. Code Ann. § 10-1- 372(a)(5), (7), and (12) by, among other things:

a.    Omitting and concealing the material fact that it did not employ reasonable measures to secure consumers' PII. Defendant could and should have made a proper disclosure to consumers (including its customers) during its loan process, or by any other means reasonably calculated to inform consumers of the inadequate data security; and

b.    Making implied or implicit representations that its data security practices were sufficient to protect consumers' PII. Defendant acquired consumers' PII during the loan process. In doing so, Defendant made implied or implicit representations that its data security practices were sufficient to protect consumers' PII. By virtue of accepting Representative Plaintiffs' PII during the loan process, Defendant implicitly represented that its data security processes were sufficient to safeguard the PII.

171.   The Georgia DTPA states that "[i]n order to prevail in an action under this part, a complainant need not prove . . . actual confusion or misunderstanding." Ga. Code Ann. § 10-1- 372(b).

172.   The Georgia DTPA further states: "A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the

principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required." Ga. Code Ann. § 10-1-373(a).

173.   While Defendant provided notice of the Date Breach, Defendant has not provided sufficient details regarding the full scope of the Data Breach or any details related to the remedial measures that it has taken to improve and more fully safeguard Plaintiffs' and Georgia Subclass Members' data from future compromise. As a result, Plaintiffs, Georgia Subclass Members and Defendant's customers remain uninformed and confused as to the adequacy of Defendant's data security and Defendant's ability to protect the PII entrusted to it. Without adequate improvements, Plaintiffs' and Georgia Subclass Members' data remains at an unreasonable risk for future compromise.

174.   Moreover, Defendant, through its omissions and Notice continues to represent and imply that its data security measures are adequate to protect the PII of Plaintiffs and the Georgia Subclass. Such continued representations and implications, without disclosure of the full scope of the Data Breach or remedial enhancements, place Plaintiffs and Georgia Subclass Members at a future risk of harm, as Plaintiffs, Georgia Subclass Members and Defendant's clients are not fully informed as to whether Defendant's data security measures have been improved

since the Data Breach. By all available measures, Defendant's data systems have not been adequately improved, and the Representative Plaintiffs and Georgia Subclass Members remain at an unreasonable risk from future cyberattacks.

175.   Plaintiffs and the Georgia Subclass, therefore, are entitled to the injunctive relief sought herein because, among other things, Defendant continues to retain their PII, future cyber-attacks targeting the same data are foreseeable, and Defendant has not provided sufficient notice identifying any remedial measures that will protect the data from future attack. Moreover, absent injunctive relief, Defendant will continue to misrepresent and imply that its data systems are adequate to protect the PII of Plaintiffs and the Georgia Subclass from future cyberattacks without providing any firm details or basis to support these representations.

176.   The Georgia DTPA states that the "court, in its discretion, may award attorney's fees to the prevailing party if . . . [t]he party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Ga. Code Ann. § 10-1-373(b)(2). Defendant willfully engaged in deceptive trade practices knowing them to be deceptive. Defendant knew or should have known that its data security practices were deficient. This is true because, among other things, Defendant was aware that entities responsible for collecting and maintaining large amounts of PII, including Social Security numbers and financial information, are

frequent targets of sophisticated cyberattacks. Defendant knew or should have known that its data security practices were insufficient to guard against those attacks.

177.   The Georgia DTPA states that "[c]osts shall be allowed to the prevailing party unless the court otherwise directs." Ga. Code Ann. § 10-1-373(b). Plaintiffs and the Georgia Subclass are entitled to recover their costs of pursuing this litigation.

178.   As a result of Defendant's deceptive acts and practices, Plaintiffs and the Georgia Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property and nonmonetary damages, as alleged herein.

179.   As a further result of Defendant's deceptive acts and practices, Plaintiffs and the Georgia Subclass are at future risk of injury as a result of Defendant's misrepresentations as to its data security practices and the lack of information Defendant has provided regarding any enhancements to its data security.

180.   Plaintiffs and the Georgia Subclass seek all monetary and nonmonetary relief allowed by the Georgia DTPA, including injunctive relief and attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**Louisiana Database Security Breach Notification Law**
**La. Rev. Stat. Ann. §§ 51:3074(A),** *et seq.*
**(On behalf of the Louisiana Subclass**)

181.   Each allegation of the preceding paragraphs 1-180 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

182.   The Louisiana Plaintiffs, Medine, Thomas, and Broomfield individually (hereinafter "Plaintiff" for purposes of this Count only) and on behalf of the Louisiana Subclass, brings this claim.

183.   Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by La. Rev. Stat. Ann. § 51:3074(C).

184.   Plaintiff's and Louisiana Subclass Members' PII includes Personal Information as covered under La. Rev. Stat. Ann. § 51:3074(C).

185.   Defendant is required to accurately notify Plaintiff and Louisiana Subclass Members if it becomes aware of a breach of its data security system that was reasonably likely to have caused unauthorized persons to acquire Plaintiff's and Louisiana Subclass Members' PII, in the most expedient time possible and without unreasonable delay under La. Rev. Stat. Ann. § 51:3074(C).

186.   Because Defendant was aware of a breach of its security system that was reasonably likely to have caused unauthorized persons to acquire Plaintiff's and Louisiana Subclass Members' PII, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by La. Rev. Stat. Ann. § 51:3074(C).

187.   By failing to disclose the Data Breach in a timely and accurate manner, Defendant violated La. Rev. Stat. Ann. § 51:3074(C).

188.   As a direct and proximate result of Defendant's violations of La. Rev. Stat. Ann. § 51:3074(C), Plaintiff and Louisiana Subclass Members suffered damages, as described above.

189.   As a direct and proximate result of Defendant's violations, Plaintiff and Louisiana Subclass Members seek relief under La. Rev. Stat. Ann. § 51:3075, including actual damages.

**EIGHTH CLAIM FOR RELIEF**
**Louisiana Unfair Trade Practices and Consumer Protection Law**
**La. Rev. Stat. Ann. §§ 51:1401, *et seq.***
**(On behalf of the Louisiana Subclass)**

190.   Each and every allegation of the preceding paragraphs 1-189 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

191.   The Louisiana Plaintiffs, Medine, Thomas, and Broomfield individually (hereinafter "Plaintiff" for purposes of this Count only) and on behalf of the Louisiana Subclass, brings this claim.

192.   Defendant, Plaintiff and the Louisiana Subclass Members are "persons" within the meaning of the La. Rev. Stat. Ann. § 51:1402(8).

193.   Plaintiff and Louisiana Subclass Members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

194.   Defendant engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

195.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). Unfair acts are those that offend established public policy, while deceptive acts are practices that amount to fraud, deceit or misrepresentation.

196.   Defendant engaged in unfair and deceptive acts and practices that violated the La. Rev. Stat. Ann. § 51:1405, including:

>  a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass Members' PII/PHI, which was a direct and proximate cause of the Data Breach;
>
>  b.   Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;
>
>  c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass

Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Subclass Members' PII, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass Members' PII; and

g.   Omitting, suppressing and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

197.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PII.

198.   Defendant intended to mislead Plaintiff and Louisiana Subclass Members and induce them to rely on its misrepresentations and omissions.

199.   Defendant's unfair and deceptive acts and practices were immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiff and Louisiana Subclass Members that they could not reasonably avoid— this substantial injury outweighed any benefits to consumers or to competition.

200.   Defendant acted intentionally, knowingly and maliciously to violate Unfair Trade Practices and Consumer Protection Law and recklessly disregarded Plaintiff's and Louisiana Subclass Members' rights.

201.   Had Defendant disclosed to Plaintiff and Louisiana Subclass Members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant was trusted with valuable PII regarding thousands of consumers, including Plaintiff and the Subclass. Defendant accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly,

Plaintiff and the Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

202.   As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Louisiana Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and nonmonetary damages, as described herein, including but not limited to fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, loss of value of their PII, overpayment for Defendant's services, loss of the value of access to their PII and the value of identity protection services made necessary by the Data Breach.

203. Plaintiff and Louisiana Subclass Members seek all monetary and nonmonetary relief allowed by law, including actual damages, treble damages for Defendant knowing violations of the Louisiana CPL, declaratory relief, attorneys' fees and any other relief that is just and proper.

## NINTH CLAIM FOR RELIEF
### Mississippi Consumer Protection Act
### Miss. Code §§ 75-24-1, *et seq.*
### (On behalf of the Mississippi Subclass)

204.   Each and every allegation of the preceding paragraphs 1-203 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

205.   The Mississippi Plaintiff, Caraway, individually (hereinafter "Plaintiff" for purposes of this Count only) and on behalf of the Mississippi Subclass, brings this claim.

206.   Defendant is a "person," as defined by Miss. Code § 75-24-3.

207.   Defendant advertised, offered or sold goods or services in Mississippi and engaged in trade or commerce directly or indirectly affecting the people of Mississippi, as defined by Miss. Code § 75-24-3.

208.   Plaintiff has complied with all pre-conditions for bringing a private action under Miss. Code § 75-24-15.

209.   Defendant engaged in unfair and deceptive trade acts or practices, including:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Mississippi Subclass

Members' Personal Information, which was a direct and proximate cause of the Defendant Data Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Defendant Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Mississippi Subclass Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e and the GLBA, 15 U.S.C. § 6801, *et seq.*, which was a direct and proximate cause of the Defendant Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Mississippi Subclass Members' Personal Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff

and Mississippi Subclass Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e and the GLBA, 15 U.S.C. § 6801, *et seq.*;

    f.    Omitting, suppressing and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Mississippi Subclass Members' Personal Information; and

    g.    Omitting, suppressing and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Mississippi Subclass Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e and the GLBA, 15 U.S.C. § 6801, *et seq.*

210.   The above-described conduct violated Miss. Code Ann. § 75-24-5(2), including:

    a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

b.    Representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model, if they are of another; and

c.    Advertising goods or services with intent not to sell them as advertised.

211.  Defendant intended to mislead Plaintiff and Mississippi Subclass Members and induce them to rely on its misrepresentations and omissions.

212.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information/PII.

213.  Had Defendant disclosed to Plaintiff and Class Members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a trustworthy financial system and Defendant was trusted with sensitive and valuable Personal Information regarding thousands of consumers, including Plaintiff and the Mississippi Subclass. Defendant accepted this responsibility while keeping the inadequate state of its security controls secret from the public. Accordingly,

because Defendant held itself out as having a special role in the financial system with a corresponding duty of trustworthiness and care, Plaintiff and the Mississippi Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

214.   Defendant had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extensivity of the Personal Information in its possession and the generally accepted professional standards in the credit reporting industry and the position of trust described in the immediately-preceding paragraph. In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Plaintiff and the Mississippi Subclass— and Defendant, because consumers are unable to fully protect their interests with regard to their data and placed trust and confidence in Defendant. Defendant's duty to disclose also arose from its:

a.   Possession of exclusive knowledge regarding the security of the data in its systems;

b.   Active concealment of the state of its security; and/or

c.   Incomplete representations about the security and integrity of its computer and data systems and its prior data breaches, while

purposefully withholding material facts from Plaintiff and the Mississippi Subclass that contradicted these representations.

215.  Defendant acted intentionally, knowingly and maliciously to violate Mississippi's Consumer Protection Act and recklessly disregarded Plaintiff's and Mississippi Subclass Members' rights. Defendant's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

216.  As a direct and proximate result of Defendant's unfair and deceptive acts or practices and Plaintiff's and Mississippi Subclass Members' purchase of goods or services primarily for personal, family or household purposes, Plaintiff and Mississippi Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and nonmonetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft and loss of value of their Personal Information.

217.  Defendant's violations present a continuing risk to Plaintiff(s) and Mississippi Subclass Members as well as to the general public.

218.  Plaintiff and Mississippi Subclass Members seek all monetary and nonmonetary relief allowed by law, including actual damages, restitution and other

relief under Miss. Code § 75-24-11, injunctive relief, punitive damages and reasonable attorneys' fees and costs.

**TENTH CLAIM FOR RELIEF**
**South Carolina Data Breach Security Act**
**S.C. Code Ann. §§ 39-1-90, *et seq.***
**(On behalf of the South Carolina Subclass)**

219.   Each and every allegation of the preceding paragraphs 1-218 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

220.   The South Carolina Plaintiffs, Green and Boyd, individually (hereinafter "Plaintiffs" for purposes of this Count only) and on behalf of the South Carolina Subclass, brings this claim.

221.   Defendant is a business that owns or licenses computerized data or other data that includes Personal Information, pursuant to S.C. Code Ann. § 39-1-90(A).

222.   Plaintiffs' and South Carolina Subclass Members' PII includes Personal Information, as covered under S.C. Code Ann. § 39-1-90(D)(3).

223.   Defendant is required to accurately notify Plaintiffs and South Carolina Subclass Members following discovery or notification of a breach of its data security system if PII that was not rendered unusable through encryption, redaction or other

methods was or was reasonably believed to have been acquired by an unauthorized person, creating a material risk of harm, in the most expedient time possible and without unreasonable delay, pursuant to S.C. Code Ann. § 39-1-90(A).

224.   Because Defendant discovered a breach of its data security system in which PII that was not rendered unusable through encryption, redaction or other methods, was or was reasonably believed to have been acquired by an unauthorized person, creating a material risk of harm, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion, pursuant to S.C. Code Ann. § 39-1-90(A).

225.   By failing to disclose the Data Breach in a timely and accurate manner, Defendant violated S.C. Code Ann. § 39-1-90(A).

226.   As a direct and proximate result of Defendant's violations of S.C. Code Ann. § 39-1-90(A), Plaintiffs and South Carolina Subclass Members suffered damages, as described above.

227.   Plaintiffs and South Carolina Subclass Members seek relief under S.C. Code Ann. § 39-1-90(G), including actual damages and injunctive relief.

**ELEVENTH CLAIM FOR RELIEF**
**South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. §§ 39-5-10, *et seq.***
**(On behalf of the South Carolina Subclass)**

228.   Each and every allegation of the preceding paragraphs 1-227 is incorporated in this Cause of Action with the same force and effect as though fully set forth herein.

229.   The South Carolina Plaintiffs, Green and Boyd, individually (hereinafter "Plaintiffs" for purposes of this Count only) and on behalf of the South Carolina Subclass, brings this claim.

230.   Defendant is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

231.   South Carolina's Unfair Trade Practices Act ("SC UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a).

232.   Defendant advertised, offered and/or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

233.   Defendant engaged in unfair and deceptive practices, including:

   a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and South Carolina

-75-

Subclass Members' PII, which was a direct and proximate cause of the Data Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks and adequately maintain and/or improve security and privacy measures, which was a direct and proximate cause of the Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and South Carolina Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*, which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and South Carolina Subclass Members' PII/PHI, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and South Carolina Subclass Members' Personal

Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

f.  Omitting, suppressing and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and South Carolina Subclass Members' PII; and

g.  Omitting, suppressing and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and South Carolina Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

234.  Defendant's acts and practices had and continue to have, the tendency or capacity to deceive.

235.  Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's cybersecurity and ability to protect the confidentiality of South Carolina consumers' PII.

236.  Defendant intended to mislead Plaintiffs and South Carolina Subclass Members and induce them to rely on its misrepresentations and omissions.

237.   Had Defendant disclosed to Plaintiffs and South Carolina Subclass Members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant held itself out as a trustworthy financial system and Defendant was trusted with sensitive and valuable Personal Information regarding thousands of consumers, including Plaintiffs and the South Carolina Subclass. Defendant accepted that responsibility while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and the South Carolina Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

238.   Defendant had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extensivity of the PII in its possession and the generally accepted professional standards in the information technology field. Such a duty is also implied by law due to the nature of the relationship between consumers—including Plaintiffs and the South Carolina Subclass—and Defendant, because consumers are unable to fully protect their interests with regard to the PII in Defendant's possession and place trust and confidence in Defendant. Defendant's duty to disclose also arose from its:

a.    Possession of exclusive knowledge regarding the security of the data in its systems;

b.    Active concealment of the state of its security; and/or

c.    Incomplete representations about the security and integrity of its computer and data systems and its prior data breaches, while purposefully withholding material facts from Plaintiff and the South Carolina Subclass that contradicted these representations.

239.   Defendant's business acts and practices offend an established public policy or are immoral, unethical or oppressive. Defendant's acts and practices offend established public policies that seek to protect consumers' PII and ensure that entities entrusted with PII use appropriate security measures. These public policies are reflected in laws such as the FTC Act, 15 U.S.C. § 45, *et seq.,* and the South Carolina Data Breach Security Act, S.C. Code § 39-1-90, *et seq.*

240.   Defendant's failure to implement and maintain reasonable security measures was immoral, unethical or oppressive in light of the sensitivity and extensivity of PII in its possession and its admitted duty of trustworthiness and care as an entrusted steward of the PII.

241.   Defendant's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

Defendant engages in such acts or practices as a general rule and such acts or practices impact the public at large.

242.   Defendant's unfair and deceptive acts or practices have the potential for repetition because the same kinds of actions occurred in the past, thus making it likely that these acts or practices will continue to occur if left undeterred. Additionally, Defendant's policies and procedures, such as its security practices, create the potential for recurrence of the complained-of business acts and practices.

243.   Defendant's violations present a continuing risk to Plaintiffs and South Carolina Subclass Members as well as to the general public.

244.   Defendant intended to mislead Plaintiffs and South Carolina Subclass Members and induce them to rely on its misrepresentations and omissions.

245.   Defendant acted intentionally, knowingly and maliciously to violate South Carolina's Unfair Trade Practices Act and recklessly disregarded Plaintiffs' and South Carolina Subclass Members' rights. In light of this conduct, punitive damages would serve the interest of society in punishing and warning others not to engage in such conduct and would deter Defendant and others from committing similar conduct in the future.

246.   As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and South Carolina Subclass Members have suffered and

will continue to suffer injury, ascertainable losses of money or property and monetary and nonmonetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, loss of value of their PII, loss of the value of services already provided by Defendant and time and money spent remediating the effects of the Data Breach.

247.   Plaintiffs and South Carolina Subclass Members seek all monetary and nonmonetary relief allowed by law, including damages for their economic losses, treble damages, punitive damages, injunctive relief and reasonable attorneys' fees and costs.

## **RELIEF SOUGHT**

**WHEREFORE,** Representative Plaintiffs, on behalf of themselves and each member of the proposed National Class and the State Subclasses, respectfully request the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1.     That the Court declare, adjudge and decree that this action is a proper class action and certify each of the proposed Classes and/or any other appropriate Subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Representative Plaintiffs' counsel as Class Counsel;

2.     For an award of damages, including actual, nominal and consequential damages, as allowed by law in an amount to be determined;

3.     That the Court enjoin Defendant, ordering it to cease and desist from unlawful activities;

4.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiffs' and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Representative Plaintiffs and Class Members;

5.     For injunctive relief requested by Representative Plaintiffs, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiffs and Class Members, including but not limited to an Order:

        a.     prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

        b.     requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

        c.     requiring Defendant to delete and purge Representative Plaintiff's and Class Members' PII unless Defendant can provide to the Court reasonable justification for the retention and use of

such information when weighed against the privacy interests of Representative Plaintiffs and Class Members;

d.      requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiffs' and Class Members' PII;

e.      requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests and audits on Defendant's systems on a periodic basis;

f.      prohibiting Defendant from maintaining Representative Plaintiffs' and Class Members' PII on a cloud-based database;

g.      requiring Defendant to segment data by creating firewalls and access controls so that if one area of Defendant's network is compromised hackers cannot gain access to other portions of Defendant's systems;

h.      requiring Defendant to conduct regular database scanning and securing checks;

i.      requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting Representative Plaintiffs' and Class Members' PII;

j.      requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs and systems for protecting personal identifying information;

k.   requiring Defendant to implement, maintain, review and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested and updated;

requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.   For prejudgment interest at the prevailing legal rate;

7.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

8.   For all other Orders, findings, and determinations identified and sought in this Complaint.

## **JURY DEMAND**

Representative Plaintiffs, individually and on behalf of the Plaintiff Class(es) and/or Subclass(es), hereby demand a trial by jury for all issues triable by jury.

Dated: April 28, 2023        By:      */s/ Laura Van Note*

Laura Van Note (admitted *pro hac vice*)
**COLE & VAN NOTE**
555 12th Street, Suite 1725
Oakland, California 94607
Telephone:  (510) 891-9800
Email:       lvn@colevannote.com

-84-

_/s/ Charles Van Horn_
Charles Van Horn, Esq.
**BERMAN FINK VAN HORN P.C.**
3475 Piedmont Road, Suite 1640
Atlanta, Georgia 30305
Telephone:  (404) 261-7711
Email:        cvanhorn@bfvlaw.com


Gary E. Mason*
Danielle L. Perry*
Lisa A. White*
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
Email:        gmason@masonllp.com
Email:        dperry@masonllp.com
Email:        lwhite@masonllp.com


**MORGAN & MORGAN, P.A**
Gregory Bosseler
191 Peachtree Street N.E., Suite 4200
P.O. Box 57007
Atlanta, Georgia 30343-1007
Email:        gbosseler@ForThePeople.com


Ryan D. Maxey (admitted _pro hac vice_)
**MORGAN & MORGAN COMPLEX
BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Email:        rmaxey@ForThePeople.com


*Pro hac vice applications forthcoming
Attorneys for Representative Plaintiffs
and the Plaintiff Classes

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 28, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served today on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF and on counsel in the related cases to their respective emails per the below service list.

Allen v. 1st Franklin Financial Corporation (2:23cv49)

MaryBeth Gibson (mgibson@thefinleyfirm.com)

Gary Klinger (gklinger@milberg.com)

Dunn v. 1st Franklin Financial Corporation (2:23cv52)

Jason Rathod (jrathod@classlawdc.com)

Kyle G.A. Wallace (kwallace@shiverhamilton.com)

<u>/s/ Laura Van Note</u>

Laura Van Note, Esq.