IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| **WILLIAM MORELAND,** *individually, and on behalf of all others similarly situated*, **et al.** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **1ST FRANKLIN FINANCIAL CORPORATION,** <br><br> **Defendant.** | **CIVIL ACTION FILE** <br><br> **No. 2:23-CV-00038-SCJ** |

## ORDER

This matter appears before the Court on Defendant's Motion to Compel Arbitration.[1] Doc. No. [30]. For the following reasons, the Court **GRANTS** Defendant's Motion and **DIRECTS** the Clerk to **ADMINSTRATIVELY CLOSE** this case pending the outcome of the arbitration proceedings.

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

## I.   BACKGROUND

In March 2023, Plaintiff Moreland and other named Plaintiffs filed several lawsuits against Defendant following a data breach (in November 2022) of Defendant's cyber systems, in which Plaintiffs personal information was compromised.[2] Doc. No. [23], ¶¶ 2–4. Defendant possessed Plaintiffs personal information from individual lending transactions between itself and each named Plaintiff. Id. ¶ 12, 20–34. Plaintiffs assert numerous claims (*e.g.*, negligence, breach of implied contract, unjust enrichment, etc.) against Defendant for its purported failure to securely maintain Plaintiffs' personal information. See generally id. Plaintiffs also indicate that they will seek class certification for the data breach. Id. ¶¶ 38–45.

On July 20, 2023, Defendant moved to compel arbitration under the lending agreements entered with each named Plaintiff in this case. Doc. No. [30]. In support, Defendant attached a declaration by Angela Brock, a long-time employee of Defendant, who attested to the lending agreements entered by

---

[2] The Court consolidated the cases into the above-captioned case and ordered the Parties to file a consolidated amended complaint. Doc. Nos. [14]; [19]. Thereafter Plaintiffs filed their second amended complaint, which is the operative complaint at this time. Doc. No. [23].

2

Plaintiffs and attached exact copies of the agreements to her declaration. Doc. No. [30-2]. Plaintiffs responded in opposition to the motion to compel, in large part because none of the attached lending agreements contained signatures. Doc. No. [33]. In reply, Defendant filed another supplemental declaration by Brock, which contained eight (8) of the thirteen (13) named Plaintiffs' signed agreements and explained why the other five (5) signed agreements were unobtainable. Doc. No. [38-1]. Both Brock's initial declaration and supplemental declaration also explained that the blank agreements attached in reference to the five (5) remaining Plaintiffs were exact copies of the agreement that would have been entered by the Parties as of the date of the loan. Doc. Nos. [30-2], ¶ 27; [38-1], ¶¶ 22–29.

All the attached lending agreements contained a number of waivers (*i.e.*, waiver of a jury or bench trial, waiver of right to participate in a class action, etc.) as well as an arbitration agreement, requiring the Parties to submit to an arbitrator for claims relating to the lending agreement. See, e.g., Doc. No. [30-16] (attaching the Defendant's current lending agreement used in transactions, which exemplifies the terms governing each Plaintiff's discrete lending agreement).

3

Following motions by the Parties, the Court permitted Plaintiffs to file a sur-reply and Defendant to file a sur-response. Doc. Nos. [41]; [44]. Briefing on the motion to compel arbitration is now complete and the motion is ripe for the Court's review.

## II.   LEGAL STANDARD

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, specifies the federal policy and procedures governing arbitration. Arbitration is a matter of contract, and the FAA clearly indicates a "liberal federal policy favoring arbitration." Jones v. Waffle House, Inc., 866 F.3d 1257, 1264 (11th Cir. 2017) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). Generally, if a "contract evidence[es] a transaction involving commerce" and contains an arbitration agreement, then the FAA provides for its enforceability, unless there is a legal or equitable reason requiring the contrary. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (quoting 9 U.S.C. § 2). Indeed, even agreements "to arbitrate gateway questions of arbitrability" such as "enforceability, scope, applicability, and interpretation of the arbitration agreement" (*i.e.*, a "delegation provision") are permitted as "an additional, antecedent agreement the party seeking arbitration asks the federal court to

4

enforce[.]" Jones, 866 F.3d at 1264 (final quote quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70 (2010)).

State law governs the enforceability of arbitration agreements. Caley, 428 F.3d at 1368. "The 'federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.'" Id. (quoting Cooper v. MRM Inv. Co., 367 F.3d 493, 498 (6th Cir. 2004)).

In Georgia[3], for a contract to be binding and enforceable requires: "1) [the] parties [are] able to contract; 2) consideration moving to the contract; 3) a subject matter upon which the contract can operate; and 4) the assent of the parties to the terms of the contract." Today's Shopping Network, Inc. v. Roberts Commc'ns Network, Inc., No. 1:05-CV-1908-JEC, 2006 WL 8432839, at *5 (N.D. Ga. Feb. 13, 2006) (citing TranSouth Fin. Corp. v. Rooks, 269 Ga. App. 321, 323, 604 S.E.2d 562, 563 (2004)). Assent to a contract requires "a meeting of the minds as to all essential terms." Id. (quoting TranSouth, 269 Ga. App. at 323, 604 S.E. 2d at 563).

A district court can determine as a matter of law that the parties entered an enforceable arbitration agreement and so compel arbitration "if, after

---

[3] The Parties do not dispute that Georgia law applies to this motion. Doc. Nos. [30], 17; [33], 6 n.1.

reviewing the evidence under the relevant state substantive law, 'there is no genuine dispute as to any material fact' regarding the formation of such an agreement." Reddick v. Hewlett-Packard Co., No. 120CV04597LMMRDC, 2021 WL 5034836, at *5 (N.D. Ga. May 20, 2021), report and recommendation adopted, No. 1:20-CV-4597-LMM-RDC, 2021 WL 5033811 (N.D. Ga. June 8, 2021) (quoting Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016)).

### III.   ANALYSIS

The Parties raise a number of issues in their briefing about whether the Court should compel arbitration in this case. See, e.g., Doc. No. [33], 13–15 (whether the agreement requires signatures as a condition precedent), 24–27 (whether the arbitration agreement adequately dictates a forum for arbitration). In the Court's view, however, the issue is singular: whether the arbitration agreements attached to Defendant's motion to compel arbitration (and the additional signed agreements attached to its reply brief) each contain a "delegation provision" which require the Parties to resolve any issues regarding the applicability or enforceability of an arbitration agreement *in arbitration itself.* See Jones, 866 F.3d at 1264 ("[T]he parties may agree to arbitrate gateway

questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement.").

Indeed, the Court determines that each of the attached arbitration agreements in reference to each named Plaintiff contains a delegation provision constituting an antecedent agreement requiring arbitration of gateway questions, such as whether the Parties entered an arbitration agreement, the enforceability of the arbitration agreement, and its scope. See, e.g., Doc. No. [38-2], 4 (specifying the terms of Plaintiff Moreland's agreement to arbitrate as including "claims . . . concern[ing] whether any claims, controversies, or disputes between us are subject to arbitration to the extent permitted by federal law[,]" and that an example of such "arbitrable claim[ ]" is "that the parties never entered into a Loan Note or an Alternative Dispute Resolution Agreement"); see also Doc. Nos. [38-3], 3 (Plaintiff Laney); [38-4], 5 (Plaintiff Williams); [38-5], 5 (Plaintiff Medine); [38-6], 6 (Plaintiff Broomfield); [38-7], 5 (Plaintiff Boyd); [38-8], 3 (Plaintiff Smith); [38-8], 3 (Plaintiff Greene); [30-7], 4 (Plaintiff Ariel); [30-8], 5 (Plaintiff Caraway); [30-9], 10 (Plaintiff Craft); [30-12], 2 (Plaintiff Thomas).

The language in each delegation provision "manifest[s] a clear and unmistakable intent to arbitrate gateway issues." Jones, 866 F.3d at 1267. In fact,

the language in each Plaintiff's agreement is nearly (if not completely) identical to the language in Defendant's current arbitration agreement, which provides for arbitration of "any and all disputes, claims, or controversies" "arising out of or relating to" the lending relationship, including "*whether any claims, controversies, or disputes between us are subject to arbitration to the extent permitted by federal law*." Doc. No. [30-16], 5 (emphasis added). The agreement lists examples of such claims to be "that the parties never entered into a Loan Note or an Alternative Dispute Resolution Agreement" and "the scope or interpretation of any Loan Note or any Alternative Dispute Resolution Agreement." Id. This language is similar enough as the contract language in Jones and other Eleventh Circuit cases dealing with delegation provisions for the Court to conclude that the Parties to these agreements in this case manifested clear "intent to arbitrate all gateway issues." Jones, 866 F.3d at 1267; see also id. (discussing other cases language finding the requisite intent in delegation provisions).

When a delegation provision is present, the Court can only resolve a "challenge to that specific provision." Id. at 1264 (quoting Parnell v. CashCall, Inc., 804 F.3d 1142, 1144 (11th Cir. 2015)). Only if the delegation provision itself is "invalid or unenforceable may [the court] review the enforceability of the

arbitration agreement as a whole." Id. (quoting Parm v. Nat'l Bank of Cal., N.A., 835 F.3d 1331, 1335 (11th Cir. 2016)).

However, challenges to delegation provisions must be "directly" asserted. Id. (quoting Parnell, 804 F.3d at 1144). That is, the party opposing arbitration must "allege[ ] that the delegation provision specifically—and not just the agreement as a whole" is unenforceable or invalid. Id. "Absent such a challenge . . . we treat a delegation provision as valid and permit the parties to proceed to arbitration [under the FAA]." Parnell, 804 F.3d at 1144.

Here, Plaintiffs make arguments relating to the arbitration agreement broadly. Doc. Nos. [33]; [41]. Most importantly, Plaintiffs contend that the attached arbitration agreements to Defendant's motion to compel arbitration do not contain required signatures and do not show that Plaintiffs assented to arbitration in this case. Doc. No. [33], 7–21. Defendant's have since attached signed arbitration agreements by eight (8) of the thirteen (13) named Plaintiffs. See Doc. Nos. [38-2]–[38-9]. Plaintiffs maintain their arguments about Defendant's evidence being insufficient as to the five (5) remaining Plaintiffs given the blank forms submitted, and also raise new arguments about the

9

enforceability of the arbitration provision for the eight (8) Plaintiffs with signed arbitration agreements. See generally Doc. No. [41].

Whether all Plaintiffs actually signed the arbitration agreement is certainly an important question. However, in all their briefing, Plaintiffs have not *directly* challenged the delegation provision itself. Thus, based on binding precedent, the Court must compel arbitration under the delegation provisions and allow the arbitrator to determine if all Plaintiffs entered a valid and enforceable arbitration agreement. See, e.g., Parnell, 804 F.3d at 1149 ("We hold that the Loan Agreement between the parties contained a delegation provision and because [the opposing party] did not directly challenge that provision, § 2 of the FAA requires us to treat it as valid and enforce the Loan Agreement according to its terms.").

The Court emphasizes that this ruling indicates nothing about the merits of Plaintiffs' arguments opposing the validity and enforceability of the arbitration agreement as a whole. If the Parties present the issues to the arbitrator in the same manner that they did to this Court, then it is the Court's impression that the arbitrator's assessment would necessarily require determining if all Plaintiffs indeed entered an arbitration agreement. If the arbitrator concludes that some (or all) Plaintiffs did not so enter an agreement, then those Plaintiffs will be

free to return to a typical judicial forum to litigate their claims. Nevertheless, based on binding Eleventh Circuit precedent on this issue, the Court must grant Defendant's motion to compel arbitration, even if these "gateway questions of arbitrability" remain outstanding. Jones, 866 F.3d at 1264.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration. Doc. No. [30]. The Court further **DIRECTS** the Clerk to **ADMINSTRATIVELY CLOSE** this case pending resolution of the arbitration.[4] If, based on any outcome of the arbitration proceedings, either Party wishes to reopen the case, they shall be permitted to do so by way of motion.

IT IS SO ORDERED this \_\_11th\_\_ day of January, 2024.

*/s/ Steve C. Jones*
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

[4] Cf. Martinez v. Carnival Corp., 744 F.3d 1240, 1244 (11th Cir. 2014) ("Notably, the district court's order did not stay the proceedings, nor did it contemplate any further action on this case. Although the district court did not dismiss the case, the court's order left all further merits determinations to the arbitrator.").